NO. 8125

COURT OF APPEAL

PARISH OF ORLEANS.

———

STANLEY A. HARVEY

versus

HENRY POHLMANN

**8125**

———

———

Dinkelspiel, J.

Plaintiff institutes this suit to recover the sum of $450.00, plus twenty five per cent attorney's fees, under a contract said to have been made between him and the defendant, authorizing plaintiff to sell certain real estate and to pay him in lieu of the commission of five per cent, all of the excess of the purchase price, over the sum of $4500.00. Further alleging that plaintiff in every particular carried out and conformed to all the covenants and considerations as agreed and which form the basis of the transaction which causes this suit, and for which he is entitled to a judgment for the amount prayed.

The answer in the main sets up that defendant was suffering at the time that the signature, which is admitted, to the document, in question, with defective eyesight and unable to read without glasses, that when the document dated April 15th, 1918, was signed by the defendant, it was presented to him by plaintiff, that defendant was without glasses and that he informed the plaintiff that he was unable to read same and that the plaintiff pretended to read to the defendant the terms incorporated in said agreement and at the time plaintiff read the said agreement so as to make it appear that he was to receive an excess of any price over Fifty Five Hundred Dollars; and that plaintiff fraudulently and intentionally misread the said document, or subsequently substituted the figures $4500.00 in lieu of $5500.00. And averring further that said acceptance of said offer by said purchaser, Carroll, who purchased the property for $5100.00 and that plaintiff agreed to reduce his commission by one hundred dollars, that at the time of the acceptance of the offer by Carroll, plaintiff made no claim for an excess of commission and the acceptance was based

117

upon a commission of five per cent; that the reduction in the price of said property was due to a deficiency in measurement. That said plaintiff received the sum of Five Hundred and Fifty Dollars from said Carroll, which he has refused to account for, and that he was entitled to a commission of five per cent on $5500.00, less one hundred dollars which he had agreed to forego, or a total of One Hundred Seventy Five Dollars; that he is therefore indebted unto your defendant for the xxxxixxdxx remaining Three Hundred Seventy Five Dollars. Alleging further that on account of defective eyesight, whilst admitting his signature to the document sued on, avers that the figures $4500.00 were fraudulently inserted therein in lieu of $5500.00 and finally assuming the character of plaintiff in xxxxxxxxixxxxx dx reconvention, prays that the demand of plaintiff be dismissed and defendant have judgment in reconvention for Three Hundred Seventy Five Dollars.

The questions presented are almost entirely based upon the testimony of plaintiff, together with the documents attached and that of his counsel, Mr. Perez.

Plaintiff's testimony substantially is in accord more or less, with the allegations in his petition, he swears positively that the defendant signed the document appointing him, plaintiff, as the agent to sell this property; that he had his glasses on before signing; that he read every word and after reading deliberately signed same.

Mr. Perez, his counsel, supports him in that portion of his testimony which simply asked for instructions in reference to the document and sundry other matters connected therewith and he, Mr. Perez, being ill at the time, gave certain advice to the plaintiff, but in no wise tendered to aid us in the determination of the real questions in this case.

On the other hand we have the testimony of the defendant and his wife, who positively swear that the defendant did not have his glasses at the time the agreement in question was presented to him; that same was read by the plaintiff to him and that he signed under representations made to him by the plaintiff, particularly in reference to his commission as to five per cent on the amount of the sale or whether or not he, plaintiff, was to receive the entire difference between Forty Five Hundred Dollars and whatever the property may have brought and especially denying that there ever was an intention on the part of the defendant to pay him anything beyond the five per cent commission, no matter what the property in question might have brought.

Independent and irrespective of the testimony of defendant and his wife, we have in this record the testimony of the purchaser of this property, Mr. Charles Carroll, a respected member of the Bar of this city, who dealt entirely with the plaintiff and gives his testimony as to the occurrences from time to time from the beginning of the transaction until its final conclusion and in answer to the question to state just what dealings he had with Mr. Harvey with reference to the transfer of the property in question, the witness goes on to state:

"Early in April, 1918, I was hunting for some property on the belt, the railroad belt line, for the Simplex Flour Company. I sent out a         circular to a number of real estate agents, stating this fact, and amongst other replies received one from the plaintiff", and without quoting the entire answer to the question put to this witness, he testified that plaintiff first asked him Six Thousand Dollars for the property and insisted that his client would not take less than that sum, that his commission on that would be three per cent, or five per cent, finally offering to pay for the property, provided

119

the description and the titles were clear, the sum of Fifty
Five Hundred Dollars, and finding that the sketch was not
quite correct, another sketch was given to him and the ti-
tles having been examined a part of the property was found
not to be correct and the price therefore was reduced to
the sum of $5100.00, which was finally accepted and during
the course of a conversation he agreed to receive one hun-
dred dollars less from the defendant for the commission he
was to have received.

Q. Did he say what his commission was?

A. He said five per cent on the amount and we
figured the amount and he would knock off one hundred dol-
lars from his commission; my recollection is we made up a
little memorandum, which I gave to Harvey and Pohlmann and
that showed how each would stand and the net amount that
Pohlmann was to get under the new arrangement, knocking
off one hundred dollars from Harvey's commission; then
we agreed on the sale and it was to be on the 29th of
April; the act was passed on April 30th.

This witness goes on to testify at great length
the nature of the conversation which we do not think it
necessary to give in full.

Q. Did Mr. Harvey tell you his commission was
five per cent?

A. Absolutely; not only that but it was in the
paper that I signed.

Q. Did he tell you Mr. Pohlmann wouldn't accept
less than Fifty Five Hundred Dollars?

A. Yes sir, he told me it was a shame to cut him
down to Fifty Five Hundred, he told me the property was worth
and had cost Mr. Pohlmann more and a lot to that effect and it
was a pity to take advantage of Mr. Pohlmann and cut him down
to Fifty Five Hundred Dollars.

I never dreamed until long after that Mr. Harvey claimed to have some agreement what Mr. Pohlman was to receive so much net and that he all the excess was to belong to him; Harvey had never talked any other way than that he was selling first for Six Thousand Dollars and then for Fifty Five Hundred Dollars and that he was to get five per cent on the sale, he never said that he was an owner or that Harvey had an interest in it from beginning to end; if he had I would have known better, how to deal to get the property for much less.

On his cross examination this witness corroborated and reaffirmed his testimony heretofore referred to, going into many more details than in the original examination, but in no wise, in our opinion, effecting same.

One of the witnesses was Oscar C. Oury, who substantially testified that he visited plaintiff at his office in company with the defendant, that he heard the conversation between plaintiff and defendant in reference to the deposit .

Q. What did Mr. Pohlmann see Mr. Harvey with reference to?

A. It was for a deposit on some property.

Q. What did Mr. Pohlmann ask Mr. Harvey?

A. Asked him when? He went there to get this money.

Q. From whom?

A. Mr. Harvey. Mr. Harvey told him as soon as everything was signed, all the papers, he would pay him.

Elias Pailet, a real estate agent in this city, familiar with the property in question, giving its description, owns some property in that same neighborhood.

Q. About when did you see Mr. Pohlmann with reference to a sale of that property?

A. During the winter time.

Q. About what year?

A. About three years ago.

Q. What price did you try to buy the property at?

A. He asked me $6,00.00 for it. I told him I thought I could get fifty-five hundred for it, because I was trying to bunch that property of his with mine and a few others and submit it to some purchasers.

Q. Did he offer to sell it for that?

A. No sir, he wouldn't sell it for fifty-five hundred.

A careful examination of this record has convinced us that the document purporting to be a contract to employ the plaintiff in this case, as real estate agent, to sell this property, defendant had every right to believe and did believe the price to be obtained was Fifty Five Hundred Dollars and that the commission to be received by plaintiff was five per cent on that amount and the document or agreement presented in this record, signed by the defendant, was done under the belief of the facts above stated and irrespective and independent of the testimony of the defendant and his wife in reference to defendant's defective eyesight, we have the testimony of three disinterested witnesses, one being the purchaser of the property, who swears positively and directly of what plaintiff told him in reference to the sale of this property, his commission and they are absolutely in accord with the testimony of the defendant and negative to that of plaintiff. There can be no mistake about this. Besides that, the other witnesses, one stating that he went with the defendant to plaintiff's office and there in a conversation in reference to the property in question, the deposit of ten per cent of fifty five hundred dollars being then in plaintiff's possession and before plaintiff's signature to the deed of sale of the prop-

erty, he went to see the ~~defendant~~ *pltff* with this witness to get
him to return the commission or that part of it belonging to
him, which the ~~defend~~ plaintiff promised to do the moment
he signed the act, and added to this the ~~significance~~ sig-
nificant fact that only a few years prior to the sale in
question, another witness, who owns adjoining property,
wanted to get the defendant to permit him to sell his prop-
erty and thought he might get fifty five hundred dollars, and
defendant refused and would not entertain this offer, so that
all the circumstances and the facts connected with this case
point directly to the confirming of defendant's testimony
and to our mind presents clearly the fact that plaintiff
took advantage of the defendant and concealed from him the
true facts in connection with his agency, and that defendant
signed the agreement in question under such circumstances
as lead the Court aqua to believe, as we do, that the grave
misstatements made by plaintiff to defendant, produced his
signature to the document in question and that being a fraud,
in attempting to overreach, cannot prevail in this case.

We find on examination, a case very much in common,
Denson against Stewart et al, 15 Ann, p. 456, and the syllabus
there reads:

"Where the agent, authorized to sell a thing for
a particular price, sells it at a higher price, the surplus
will belong to the principal and the agent is entitled only
to his stipulated commission."

The burden of proof being always borne by the party
who alleges, we are satisfied that this burden has been prop-
erly carried and met by the defendant in this case, on his re-
conventional demand.

Besides, on questions of fact, where the Court aqua
saw and heard the witnesses, his opinion is entitled to great

weight and it is not to be disturbed unless manifestly erroneous, and in this case we are satisfied that his opinion was justified and correct.

For the reasons assigned, it is ordered, adjudged and deersed that the judgment of the Court aqua be and the same is hereby affirmed, with costs of both Courts to be paid by plaintiff.

-Judgment affirmed-